OPINION OF THE COURT
Memorandum.
Ordered that the order is affirmed without costs.
Landlord, a nonprofit housing development fund cooperative corporation (HDFC) (see Private Housing Finance Law art XI), commenced this holdover proceeding following service of a 30-day notice of termination. Tenant answered and moved, as relevant to this appeal, for summary judgment, asserting, among other things, that the notice of termination was defective because it failed to allege a reason for the termination. Landlord opposed the motion, arguing, among other things, that it was not required to allege a reason for the termination because tenant did not take possession of the subject apartment until 11 years after the conversion to an HDFC. Finding that the record established significant government participation and entwinement in the HDFC, the Civil Court ruled that landlord was required to allege a cause for the eviction and granted the branch of tenant’s motion seeking summary judgment dismissing the petition. We affirm.
The record indicates that, in May 1991, the building, which had been managed by the Department of Housing Preservation and Development (HPD) pursuant to the Tenant Interim Lease Program (see generally 28 RCNY ch 34), was converted to an HDFC organized pursuant to the provisions of article XI of the Private Housing Finance Law. Landlord’s certificate of incorporation states that the corporation is organized exclusively for the purpose of developing a housing project for persons of low income and that none of the income and earnings of the corporation may be used for the profit of any private individual or corporation. The certificate also restricts the use, sale and transfer of the building, requiring that it shall provide housing for persons and families of low income; that for a period of 25 *53 years, it shall not be sold without HPD’s approval; and that approval shall be granted only on condition that HPD receive 40% of the profits of the disposition. It further provides that the corporation may not be dissolved without HPD’s consent. The building was conveyed by the City to landlord by deed dated June 26, 1991, which deed also included a 25-year restriction on the sale or transfer of the deed without HPD’s written approval, as well as a covenant requiring that the premises be used solely as a housing project for persons or families of low income. At the time the deed was transferred, the City and landlord executed a security agreement, which gave the City a security interest in the property for 25 years to secure, among other things, payment of the City’s 40% share of the proceeds of a sale of the building or of an individual apartment and which made landlord the City’s agent to collect the City’s 40% share of the profit upon the sale of an individual apartment.
The record further indicates that, on May 31, 2005, the City and landlord executed a regulatory agreement (see Private Housing Finance Law § 576), pursuant to which the City suspended landlord’s obligation to pay specified arrears in real estate taxes and provided for forgiveness of those arrears upon landlord’s compliance with the regulatory agreement for a period of 10 years. The agreement placed restrictions on the rentals and sales of apartments in the building, including a restriction on sales, rentals, and subleases to households whose annual income exceeds 120% of the median income; imposed a primary residency requirement upon shareholders; set forth guidelines for the management and operation of the building, including a requirement that all members of landlord’s board of directors receive an HPD-approved housing management training course; and provided for HPD’s audit of landlord’s books and for landlord’s submission to HPD of reports and of receipts for charges as well as of annual statements of income and expenses.
Upon this record, we agree with the Civil Court that the case falls within the rule of 512 E. 11th St. HDFC v Grimmet (181 AD2d 488 [1992]), notwithstanding that tenant was not in possession at the time the building was owned by the City. In Grim-met, the Appellate Division stated:
“Our examination of this record leads us to conclude, however, that dismissal of the petition is warranted on the separate ground that the government is sufficiently ‘ “entwined” ’ with the subject premises so as to trigger constitutional due process *54 protections requiring notice of the reasons for an eviction. We note, for example, that the landlord’s certificate of incorporation, which states its purpose as ‘exclusively for the . . . develop[ment of] a housing project for persons of low income’, imposes various restrictions on the use, sale, and transfer of shares of the housing project, and mandates that it provide housing pursuant to the definition of low income families contained in Private Housing Finance Law, article XI, § 576. The property may not be sold or otherwise disposed of without prior written approval of the Commissioner of Housing Preservation and Development, and the City’s approval must be obtained before a tenant may be evicted. In short, the conduct of this Housing Development Fund Cooperative is not private since its very purpose is to meet the governmental concern of housing the poor, and the City retains a right of reversion in the event the landlord fails to abide by the terms and conditions placed upon the property and its use” (181 AD2d at 489 [citation omitted]).
In the case at bar, landlord’s conduct is similarly not private, given the extensive entwinement between the City and landlord and the fact that landlord’s “very purpose is to meet the governmental concern of housing the poor,” and notwithstanding that here, unlike in Grimmet, the City’s approval was not required for the commencement of a holdover proceeding (see Matter of Volunteers of Am.-Greater N.Y., Inc. v Almonte, 65 AD3d 1155 [2009], affg 17 Misc 3d 57 [App Term, 2d & 11th Jud Dists 2007]).
Accordingly, the order is affirmed.
Steinhardt, J.P, Pesce and Rios, JJ., concur.